| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

United States District Court
Southern District of Texas
**ENTERED**
May 10, 2018
David J. Bradley, Clerk

| | | |
|---|---|---|
| Beverly Hawkins, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-15-498 |
| | § | |
| AT&T, et al., | § | |
| | § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1. *Background.*

Southwestern Bell Telephone Company is a wholly owned subsidiary of AT&T. In 1999, Bell employed Beverly Hawkins as a customer service representative. In 2013, she hurt her shoulder in a car accident. She took twelve weeks of medical leave, dating from January 14th through April 12th. Bell gave her additional leave until June 5th. When she returned to work, she requested an accommodation to stretch every two hours that she sat. Bell allowed it.

In December 2013, Hawkins asked to leave occasionally during the day for physical therapy. Bell approved sixteen of the thirty-two hours per month that she requested. After this, Hawkins says that her managers treated her "badly" and "excessively" screened her calls.

In February 2014, Hawkins applied for a transfer to the revenue management department. Bell scheduled her for an interview. Hawkins notified her attendance manager that she had jury duty that same day. The company rescheduled her interview for the day after jury duty. Bell interviewed Hawkins, but she did not get the position.

Later in the month, Hawkins asked for a day off to attend her child-support hearing. The company approved her absence, but required her to return to work with an excuse signed by the court.

The next day, Hawkins returned to work and submitted the work excuse indicating that the court released her at 5:00 p.m. Her manager thought the time on the note looked altered so she called the court clerk to verify it.

The clerk said the excuse was signed no later than lunchtime and court ended around 3:30 p.m. Based on the conversation with the clerk, her manager concluded that Hawkins changed the time. Bell suspended her without pay.

Hawkins then filed an internal complaint for discrimination because she believed that she was wrongfully suspended. She claims that younger employees were not required to submit their work excuses and that the attendance manager never investigated them. She offers no example of some young person who needed to be investigated.

In March, Bell met with Hawkins to allow her to explain why she disagreed with her suspension and why it should allow her to come back to work. At the conclusion of the meeting, Hawkins was permitted to continue working on a probationary decision-making leave for one year. The company would review her conduct in six months. Bell warned Hawkins that if she incurred additional violations, it would fire her.

When Hawkins returned to work at the end of the month, Bell met with her to discuss her internal complaint. Her claims were unsupported.

2. *First Charge.*

Hawkins filed a charge of employment discrimination with the Equal Employment Opportunity Commission in May. She claimed discrimination and retaliation because of her age and disability.

Hawkins says Bell mistreated her multiple times after she returned from medical leave. She claims that (a) her managers interrupted her calls; (b) her managers played music loudly and danced while she was on the telephone with customers; (c) the company only gave her an accommodation for sixteen hours of leave instead of the thirty-two she asked for; and (d) Bell intentionally scheduled her interview for the same day she had jury duty.

Hawkins also insists that Bell discriminated against her by suspending her and placing her on probation. In her charge, she opposed the company's policy to interview workers about their complaints while they worked. Hawkins says it harassed and retaliated against her by sending an EEOC investigator to her office to discuss her complaint. The Commission dismissed her charge and notified her of the right to sue.

3. *Reviews.*

Bell's code of conduct requires its employees to treat customers with honesty and integrity in a professional and courteous manner, so does common sense.

Over the course of ten days in September, two customers marked on their surveys that they were "very dissatisfied" with Hawkins. Bell met with her to discuss them. She conceded that she did not treat customers with "white-glove customer service," and acknowledged that she should have done things differently. She also admitted that she "failed" and became annoyed with the customers.

When her supervisor, Aloyna Hutchinson, asked her opinion on how she treated the customers, Hawkins said she pleads the fifth and twice refused to answer the questions.[1] Hutchinson recommended Hawkins's termination. The general manager approved it and she was fired in October 2014.

4. *Second Charge.*

Hawkins filed a second charge of discrimination in February 2015, for her age and disability claims. Her charge says that Bell discriminated against her because it placed her on probation, retaliated against her for filing her first charge, and then terminated her. Hawkins also claims that she had an accommodation for her disability when she was fired.

    A. *Age.*

Hawkins also contends that she was discriminated against because of her age – she was fifty-two years old. She insists Bell replaced her with someone younger and treated two young, non-disabled workers better than her, but she has not shown how they were treated differently.[2] She claims that one worker was allowed to have her laptop at her desk and the other was allowed to take one day off instead of an absence. She identifies workers who were disciplined for receiving poor evaluations and unexcused absences, but she does not know why they were punished or why the company

---

[1] The record shows Hawkins saying, "pleas the 5th."

[2] 29 U.S.C. § 623(a)(1).

negatively reviewed them. In addition, even though all of those employees worked in her department, they did not have the same manager as she did.

B.  *Disability.*

No evidence shows that Bell discriminated against Hawkins because of her disability. She says that the managers excessively screened her calls and rudely commented about her taking leave. The company is allowed closely to manage a worker's performance closely or require higher performance standards. A supervisor is also permitted to reprimand his subordinates. Although the remarks may have hurt Hawkins's feelings, they are not evidence of discrimination. The comments were made in reference to her work, not her physical condition.

Hawkins also asserts that her managers purposefully scheduled an interview on the same day she had jury duty, but then she admitted that the company rescheduled the interview to accommodate her. She represented this incident as a fact to the Commission knowing it was false and repeated it in this case.

She insists that Bell did not give her the thirty-two hours of leave per month that she requested. Instead, she says it only gave her sixteen. Bell is not obliged to give Hawkins her preferred accommodation; it only has to give her a reasonable one. In fact, Bell granted several of her requests, including additional leave, a stretch break, and time off work to attend physical therapy.

5.  *Retaliation.*

Hawkins has no retaliation claim. Bell suspended her and placed her on probation because it reasonably believed that she changed the release time on her work excuse and lied about it. Even when Bell could have fired her at that moment, it did not. The company gave her another chance and made the decision to watch her strictly over one year.

She further argues that the timing between her return, her suspension, and her firing proves that Bell retaliated against and terminated her for taking leave. The temporal proximity of a company's decision to suspend her and fire her after returning does not necessarily establish a causal connection.

Hawkins has not shown a causal connection. Eight months passed between her returning from leave and the company's suspending her. The company suspended her four months before she filed her first complaint with the Commission. In total, fifteen months lapsed from when she returned from leave and when Bell fired her.

6.  *Termination.*

Bell had legitimate, non-discriminatory, and non-retaliatory reasons for firing Hawkins: importantly, she falsified her work excuse. Despite this, Bell gave her another chance so long as she improved her behavior. She did not meet its expectations.

Hawkins admitted that she treated customers poorly when her supervisor confronted her. Because of the altered work excuse, the severity of the customers' comments, and Hawkins's own admission of fault, Bell concluded that its reasons for firing her had rigor.

7.  *Conclusion.*

Bell did not discriminate against Hawkins on the basis of her disability. It did not retaliate against her for taking leave. The facts show that Hawkins was simply a bad employee who lied and made excuses for her poor performance and insubordinate behavior.

She will taking nothing from Southwestern Bell, which tried to salvage her job.

Signed on May 10, 2018, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge