UNITED STATES DISTRICT COURT       SOUTHERN DISTRICT OF TEXAS

United States District Court
~~Southern District~~ District of Texas

**ENTERED**

June 30, 2022

Nathan Ochsner, Clerk

| | | |
|---|---|---|
| Beverly Hawkins, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-15-498 |
| | § | |
| AT&T, et al., | § | |
| | § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1.   *Introduction.*

For 15 years, Hawkins worked as a customer service representative for the Southwestern Bell Company, a subsidiary of AT&T. In 2013, she injured her shoulder and took a leave of absence to recover. The time-off for recovery combined with additional absences interfered with her work duties that ultimately led to her discharge.

She filed two Equal Employment Opportunity Commission complaints. She also sued AT&T for discrimination based on (a) age, (b) disability, (c) retaliation and harassment under the Family Medical Leave Act, and (d) retaliation under Title 7.

This court dismissed her claims based on insufficient evidence. She appealed. The Fifth Circuit remanded her disability discrimination and retaliation claim under the Family Medical Leave Act. Her claims fail, again.

2.   *Background.*

In 1999, Beverly Hawkins joined AT&T as a customer-service representative. Her job required that she deal with difficult customers. She was well-regarded at the company and received awards for her excellent customer service representation.

A.   *2011 Complaint.*

In 2011, she filed two internal complaints about her supervisor's attitude toward her taking medical leave. She claimed that her supervisor: (a) increased her responsibility in retaliation; and (b) gave her a holiday card that said, "Merry Christmas and I hope in the new Year you won't be sick as much." The internal investigation concluded that her supervisor acted professionally and the claims were unsubstantiated.

B.     *Medical Leave.*

On January 14, 2013, she hurt her shoulder in a car accident. She requested medical leave and it was granted. Three months later, she exhausted her medical leave. She requested more time to recover from a surgery. AT&T accommodated her needs with an additional eight weeks.

By June 5, 2013, her doctor cleared her to return to work without restrictions. She says she had not fully recovered. She requested two more accommodations: (a) 10-15 minutes stretch break every 2 hours of sitting; and (b) time-off for physical therapy. AT&T granted both her requests.

Hawkins says that when she returned from medical leave, her supervisor, Alonya Hutchinson, was demeaning. She says that Hutchinson screened her calls and interfered with her transfer to another division.

In February 2014, Hawkins applied for a transfer to the Revenue Management Department. Her interview was scheduled for February 6. She told the attendance manager that she had jury duty that same day and the meeting was rescheduled. She did not get the position.

C.     *Work Excuse.*

Later in the month, Hawkins asked for a day off to attend her child-support hearing. AT&T approved, but it required that she submit a work excuse when she returned to work.

During the court hearing, Hawkins says that she was detained when a domestic dispute ensued. She says she called her manager who told her not to return to work because it was close to 5:00 pm and her job ended at 6:30 p.m.

The next day, Hawkins submitted a work excuse that said she was released at 5:00 p.m. The attendance manager, Bridgette Hayward, was suspicious and called the court clerk to verify the release time. The clerk said that she signed the excuse no later than lunchtime and Hawkins was released before 3:30 p.m.

Hawkins says that she never met with the judge. Instead, she says that she met with the Office of the Attorney General outside the courtroom. In an affidavit, she says that she returned to speak with the court clerk who said that Hayward pressured her for information about Hawkins.

On February 19, 2014, Hawkins was suspended without pay for falsifying a work excuse – a violation of AT&T's code of conduct. The next day, she filed an internal complaint that she was discriminated against based on age because younger employees were not required to submit work excuses.

D.    *Probation.*

One month later, AT&T met with Hawkins to allow her to explain why she disagreed with the decision. AT&T permitted her to continue working on a probation for one year. The company would review her conduct in six months.

On March 26, 2014, she returned to work.

E.    *First Charge.*

On May 2, 2014, Hawkins lodged a complaint with the Equal Opportunity Commission. She claimed discrimination based on age and disability.

She claimed that: (1) her manager interrupted her calls; (2) her managers played music loudly and danced while she on the phone with customers; (3) the company only gave her an accommodation for 16 hours of leave instead of the 32 she asked for; and (4) AT&T intentionally scheduled her interview for the same day she had jury duty.

The Commission investigated her charge and it was dismissed.

F.    *Customer Reviews.*

Over the course of ten days in September, two customers complained that they were dissatisfied with Hawkins on a survey.

AT&T met with Hawkins to discuss the survey. She said that she was "fed up" with the caller and acknowledged that she should have done things differently. Hutchinson, her supervisor, asked her whether she treated the customer "courteously." Hawkins said she "pleads the fifth" and walked out.

Hutchinson recommended termination. She was fired on October 24, 2014.

G.    *Second Charge.*

In July 2015, she filed a second charge with the Commission. Her charge said that AT&T discriminated against her because it: (1)  placed her on probation; (2) retaliated against her for filing her first charge by firing her. She claimed that she had an accommodation for her disability when she was fired.

On February 23, 2015, she sued AT&T. It  moved for summary judgment, which this court granted. She appealed.

The Fifth Circuit remanded the case to allow Hawkins further discovery on the disability discrimination and Family Medical leave Act retaliation claim.

Discovery was completed. On December 17, 2021, AT&T moved for summary judgment again.

3.   *Motion to Strike Evidence.*

At summary judgment, the federal rules of evidence apply. Hearsay evidence has no weight.[1] Affidavits must be based on personal knowledge and have facts that would be admissible as evidence. Speculation is invalid.

AT&T moved to strike a portion of Hawkins's summary judgment evidence in her response. It says that the following affidavits was improper: (1) her own; (2) Audrey Randle; (3) Maxine Blackshear; (4) Priscilla Alvarado; and (5) Nicole Robinson. It says that Hawkins's affidavit contains hearsay that the clerk told her that Hutchinson was trying to catch her in a lie. It says that Randle's affidavit speculates about Hutchinson's attitude toward Hawkins. Hawkins does not respond.

The Clerk's comments about her conversation with Hutchinson is an out of court statement to show that AT&T took adverse action. Paragraph 24 from Hawkins's affidavit is struck. It is hearsay.

Randle's comments about Hutchinson are mere gossip and conclusory. She does not say how she knew that Hutchinson's statement to Hawkins was related to sales while Hawkins was on protected leave. Paragraph 3 and 5 are struck.

The affidavits of the last three employees are struck because it was not filed as a response. Hawkins attempted to file it as part of a sur-reply but the sur-reply did not respond to new issues raised in the reply.

Hawkins also moved to strike Irene DeMartin's declaration from AT&T's summary judgment. Irene DeMartin is a corporate representative of AT&T. Hawkins says that it should be struck because (a)  it was untimely produced after the close of discovery and (b) DeMartin lacks personal knowledge. She says that AT&T did not

---

[1] *Snapt, Inc., v. Ellipse Commc'ns, Inc.,* 430 F. App'x 349, 352 (5th Cir. 2005).

request the information included in DeMartin's affidavit over a year ago. Specifically, she wanted information about document retention policies, and she says did not benefit from it in her response because it was filed after her response.

AT&T says that it submitted DeMartin's affidavit after Hawkins refused to believe that no documents were attached to internal employment complaints. It says that Hawkins knew that AT&T would submit this declaration attesting to the forms and intake policy. It says that DeMartin says that she has personal knowledge based on a review of the relevant documents.

Again, Hawkins seeks to rehash the discovery disputes over the document retention policy and internal complaint attachments. This court generously granted Hawkins motion to reconsider by requiring AT&T to submit a random sample attesting to whether attachments were in existence. No documents were attached.

The DeMartin declaration is not critical to Hawkins's discrimination claim. It does have content that would have been helpful for Hawkins's discovery requests but it is not fatal to her claim. Because it was not imperative to her proof for her discrimination claim, it remains in the record.


4.    *Time-Barred.*

Texas law requires that a person file a complaint with the EEOC within 300 days of the date of the incident or lose the ability to recover.[2] Conduct before the 300 days is barred from consideration.

AT&T says that any action before July 6, 2013, is time-barred because she filed on May 2, 2014. It says that the court cannot consider her two 2011 internal complaints with the company that said her supervisor was "rude to her" when she took time off for medical care. Nor may the court, it says, consider the second complaint that claimed her supervisor gave her a holiday card that said, "Merry Christmas and I hope in the New Year you won't be sick as much."

Hawkins does not respond to AT&T's claim in its response. Because the 2011 internal complaint occurred before July 6, 2013, they are barred from consideration.

---

[2] *Natational RR Passenger Corp. v. Morgan*, 536 U.S. 101, 104 (2002).

5.    *Disability Discrimination.*

To succeed on a claim of disability discrimination under the Americans' with Disabilities Act (ADA), Hawkins must show that: (a) she has a disability; (b) is qualified for the job; (c) suffered an adverse employment action *because of the disability*; and (d) was replaced by a non-disabled person or treated less favorably than non-disabled employees.[3] If Hawkins establishes a prima facie case of discrimination, the burden shifts to AT&T to articulate a legitimate, non-discriminatory reason for the adverse employment.[4] If AT&T rebuts the presumption, the burden shifts to Hawkins to show a genuine issue of material fact as to whether the nondiscriminatory reason was pretext for discrimination.[5]

A.    *Disability and Qualified Individual.*

Hawkins says that her shoulder injury was a physical impairment that prevented her from reaching overhead and required orthopedic therapy. Her pleading says that major life activities were impaired.

AT&T assumes that she has a disability for purposes of summary judgment but says it remains unclear because her doctor cleared her to return to work without a single restriction.

An impairment alone is an insufficient disability. A "major life activity" is "substantially limited" when a person is significantly restricted compared with an average person who performs the same major life activity.[6]

Because AT&T accepted that she had a disability and was a qualified individual for summary judgment, the first two factors for disability discrimination are met.

B.    *Adverse Employment.*

Adverse employment occurs when a person experiences a significant change in employment status that affects conditions of work.[7]  The following are not adverse

---

[3] *Daigle v. Liberty Life Insurance Company*, 70 F.3d 394, 396 (5th Cir. 1995).

[4] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[5] *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

[6] *McInnis v. Alamo Community College Dist.*, 207 F.3d 276 (5th Cir. 2000).

[7]  *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir. 1998).

employment actions: (1) petty slights; (2) bad manners; (3) allegations of unwarranted complaints about the quality of an employee's work; and (4) unnecessary job scrutiny.[8]

AT&T says that Hawkins cannot show that she suffered an adverse action. It says that her probation period was not a definitive employment decision that significantly affected her work.

Hawkins says that AT&T made these adverse actions: (1) placed her on a year probationary period after she returned from medical leave; (2) terminated her on October 24, 2014; (3) excessively screened her calls; and (4) made disparaging comments in front of her coworkers.

The only adverse action that AT&T took was terminating her employment. Her probation does not constitute an adverse employment action because it did not change her employment duties.[9] Heightened scrutiny by excessively screening her calls is not adverse action nor are rude comments. Hawkins says that when she returned from medical leave, Hutchinson was rude to her. That is insufficient to establish an adverse action.

The termination of employment is an adverse action that survives the third element of her claim.

C.    *Similarly-Situated Employees.*

Hawkins must show that a similarly-situated, non-disabled employee was treated better than she was. Her conduct that caused the adverse employment decision must be "nearly identical" to the comparator who had a dissimilar employment outcome.[10]

Seven comparators were filed. Hawkins focused on Jaime Hayward as a comparator in her response. He was a customer service representative, managed by Hutchinson in the same time period. He had 18 personal absences. Hawkins says that he was not required to bring a work-excuse. He did not request leave under the Family Medical Leave Act. Hayward's personnel file showed that he was placed on disciplinary action for poor performance and un-excused absences.

---

[8]  *Butler v. Exxon Mobil Corp.*, 838 F.Supp.2d 473, 495-96 (M.D.La. 2012).

[9]  *Stewart v. Mo. Pac. R.R. Co.*, 121 F. App'x 558, 562-63 (5th Cir. 2005).

[10]  *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

AT&T says Hawkins cannot show a comparator with violations of the same conduct. It says her violation of the code of conduct by treating the customers poorly caused her termination. It says that Hayward is not an identical comparator because he did face disciplinary action for un-excused absences but did not violate company code while on probation.

Hawkins does not say she was fired because she violated the code of conduct. She says the conduct that caused termination was taking protected leave. She says that she was required to bring a work-excuse when her comparators were not.

The parties describe different reasons for the conduct that led to termination. Hawkins says that the dissimilar employment outcome was requiring a work excuse when an employee takes leave. AT&T says the relevant comparator is her violation of the code of conduct.

Hawkins cannot identify a single-similarly-situated comparator; that is, a non-disabled probationary employee who received negative customer service reviews and remained employed.

If the violation for comparison is whether a comparator did not have to bring a work excuse, she must identify a non-disabled probationary employee who did not have to submit a work excuse when he took leave. She does not identify a person who meets the nearly identical criteria.

Hayward was disciplined for six months because of his unexcused absences. He was required to submit documentation based on his personnel file. Hawkins was too. She says that the only difference between the two is that Hayward did not request protected leave.

The similarly-situated analysis of dissimilar treatment is based on disability – not discrimination of protected verus non-protected leave. She does not offer support that Hayward is not disabled. Hawkins's argument that the work excuse requirement, created by her protected-leave, was the catalyst for her termination is too far removed. She was not fired for not bringing a work excuse. She was fired for violating the code of conduct while on probation. She was placed on probation for allegedly fabricating a work-excuse.

The comparison fails. Because Hawkins cannot identify a similarly-situated person, she cannot establish a prima facie disability discrimination claim.

6.      *Reasonable Accommodation.*

Hawkins brings a claim for failure to accommodate under the American Disability Act. The Act requires that AT&T reasonably accommodate Hawkins disability. Reasonable accommodation does not require that AT&T grant Hawkins every request nor her preferred accommodation.[11] She bears the burden of proof.

Hawkins says AT&T gave her some accommodations but not all. For example, she requested 32 hours of leave for physical therapy per month and she was given 16 hours of leave. She says that she could not benefit from the accommodation because of the disparate treatment she faced when she returned from protected leave. She said she had to work twice as hard.

AT&T says that it granted all of Hawkins's accommodation requests. It says that Hawkins is not entitled to her best accommodation, only a reasonable accommodation.

Both parties agree that AT&T accommodated Hawkins. She offered no evidence to show that her accommodation was ineffective. Her reasons for ineffective accommodation is a natural outcome of making-up work after taking leave. It does not dictate whether AT&T reasonably accommodated.

7.      *Retaliation.*

The Family Medical Leave Act says that an employer may not discriminate against an employee for exercising their right to take medical leave.[12] To succeed, Hawkins must make a prima facie case showing that: (a) she took protected leave; (b) she suffered an adverse action; and (c) a causal connection exists between AT&T's activity and the adverse action.[13]

Adverse employment decisions for retaliation claims are similar to disability discrimination under the Family Medical Leave Act. Comments about an employee's

---

[11] *Griffin v. United Parcel Serv., Inc.,* 661 F.3d 216, 224 (5th Cir. 2011)

[12] 29 U.S.C. § 2615.

[13] *Rodriguez v. Eli Lily & Co.,* 820 F.3d 759, 766 (5th Cir. 2016)

absence does not create an adverse action.[14] If an employment action does not affect job duties, compensation, or benefits, it is not an adverse employment action.[15]

To show a causal connection, proximity in time must be minimal.[16] Cases with three to four month lapses have been insufficient to establish causation.[17] Close relation in time does not necessarily indicate causation.

AT&T say no causal connection exists between her leave and the adverse actions of her being suspended without pay, probation, and termination. It says that her suspension without pay and probationary period occurred eight months after she returned from her leave of absence in June. Seven months later she was fired. It says that it did not take an adverse action after she filed two EEOC charges. It says the lapse of time alone is insufficient to establish causation.

The time between Hawkins's termination and her leave does not support a finding of causation under the circumstances.

Even if it did, the burden would then shift to AT&T to supply a legitimate, non-retaliatory reason for her firing.[18]

In March 2014, after Hawkins was on probation, Hutchinson sent a letter to her that said any additional code of conduct violation would result in dismissal. In the span of ten days in September, Hawkins received two poor customer reviews that prompted a meeting by AT&T to discuss the code-of-conduct violation. After the meeting, Hutchinson recommended her termination. Monika Mueller, Hutchinson's supervisor, agreed.  Cathy Mathis, approved the decision..

Because AT&T had an adequate reason to fire Hawkins, the burden shifts back to her to show that AT&T's reasons were pre-textual under the McDonnell-Douglas

---

[14] *Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5, 6 (1th Cir. 2001).

[15] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).

[16] *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007).

[17] *Everett v. Central Miss., Inc. Head Start Program*, 2011 WL 4716317, at 7 n.31 (5th Cir. 2011).

[18] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)

framework.[19] Hawkins asked the court to apply a mixed-motive theory that shows more than one factor may have contributed to termination. The Fifth Circuit restrictively applies this theory for cases when substantial evidence shows that discrimination was not the sole reason for her discharge.[20] Substantial evidence is absent in this case.

Hawkins says that Hutchinson was motivated to fabricate her work-excuse and fire Hawkins because her commission was tied to team sales performance. She says that Hutchinson lost $3,000 while Hawkins was on protected leave. She also says that AT&T's reason was not legitimate because the evidence of the calls showed that the customers who gave bad reviews were already upset before they had spoke with Hawkins. She insists it was out of her control.

The Court will not apply a mixed-motive theory because the evidence does not substantially show that more than one reason played a role in her employment actions. More than eight months had passed since Hawkins took protected leave. Her impact on Hutchinson's commission for a quarter of 2013 had passed by the time she was put on probation and then terminated.

Hawkins does not show pretext. Hutchinson was not the sole-decision maker. Hawkins attempts to assert a cats-paw theory of liability premised on showing bias of a subordinate.[21] Multiple managers came to the same conclusion that she should be fired based on her violations of the code of conduct. The only evidence that Hawkins has of Hutchinson's bias is stray remarks. No evidence shows how Hutchinson's discriminatory motive tainted the decisions of the other decision-makers. Without a connection to termination, it does not establish a motivating factor for termination.

Because Hawkins has no evidence of AT&T's discriminatory animus or the falsity of its legitimate nondiscriminatory explanation that creates a jury issue, her claim fails.

---

[19] *Univ. of Tex. Sw. Med. Ctr. v. Nasser*, 570 U.S. 338, 360 (2013).

[20] *Adams v. Memorial Hermann*, 973 F.3d 343, 353 (5th Cir. 2020).

[21] *Mason v. Se. Pa. Transp. Auth.*, 134 F. Supp. 3d 868, 874 (E.D. Pa. 2015).

8.    *Conclusion.*

Beverly Hawkins will take nothing from AT&T.


Signed on June 30, 2022, at Houston, Texas.


Lynn N. Hughes
United States District Judge